1  JEFFREY G. KNOWLES (State Bar No. 129754)
2  JULIA D. GREER (State Bar No. 200479)
   SCOTT C. HALL (State Bar No. 232492)
3  COBLENTZ PATCH DUFFY & BASS LLP
   One Montgomery Street, Suite 3000
   San Francisco, California  94104-5500
4  Telephone:  415.391.4800
   Facsimile:   415.989.1663
5  Email:       ef-jgk@cpdb.com,
                ef-jdg@cpdb.com,
6                ef-sch@cpdb.com

7  Attorneys for Plaintiffs
   ARISTA MUSIC, ARISTA RECORDS, LLC,
8  LAFACE RECORDS LLC, SONY MUSIC
   ENTERTAINMENT, SONY MUSIC
9  ENTERTAINMENT US LATIN LLC, AND
   ZOMBA RECORDING, LLC

10

11             UNITED STATES DISTRICT COURT

12   NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

13

14  ARISTA MUSIC, ARISTA RECORDS, LLC,          Case No. 3:16-cv-00951 RS
    LAFACE RECORDS LLC, SONY MUSIC
15  ENTERTAINMENT, SONY MUSIC                    **PLAINTIFFS' CONSOLIDATED**
    ENTERTAINMENT US LATIN LLC, AND              **MEMORANDUM OF LAW IN**
16  ZOMBA RECORDING LLC,                         **OPPOSITION TO DEFENDANTS'**
                                                 **MOTIONS TO DISMISS COMPLAINT**
17              Plaintiffs,                      **UNDER FED. R. CIV. P. 12(b)(2) FOR**
                                                 **LACK OF PERSONAL JURISDICTION**
18         v.                                    **AND UNDER FED. R. CIV. P. 12(b)(6)**
                                                 **FOR FAILURE TO STATE A CLAIM**
19  RADIONOMY, INC., RADIONOMY S.A.,             **UPON WHICH RELIEF CAN BE**
    RADIONOMY GROUP, B.V., and                   **GRANTED**
20  ALEXANDRE SABOUNDJIAN, an
    individual,                                  Judge:   Hon. Richard Seeborg
21                                               Date:    June 16, 2016
                Defendants.                      Time:    1:30 p.m.
22                                               Crtrm.:  3, 17th Floor

23

24

25

26

27

28

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

RELEVANT FACTS .................................................................................................... 3

I.     The Radionomy Service ................................................................................ 3

II.    Radionomy's Physical Presence And Other Contacts With California ......... 4

III.   Saboundjian's Official And Repeated Representations That He Is A Resident Of California .................................................................................. 7

IV.    Saboundjian's Control Over and Direct Participation In The Infringing Conduct ........................................................................................................ 8

V.     Radionomy Group's Contacts With California .......................................... 10

ARGUMENT ............................................................................................................. 12

I.     THE COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS. ............................................................................................. 12

       A.     Applicable Legal Standards ............................................................. 12

       B.     The Court Has Personal Jurisdiction Over Saboundjian ................. 13

              1.     As A California Resident Who Owned And Operated A California-based Company, Saboundjian is Subject To General Personal Jurisdiction. ............................................. 13

              2.     Saboundjian's Contacts With California Establish Specific Personal Jurisdiction Over Him In This Case. ..................... 15

                     a.     Saboundjian's Contacts With California Go Well Beyond His Mere Status As An Officer Or Director Of The Radionomy Defendants. ........................................... 15

                     b.     Saboundjian Purposefully Directed His Conduct Toward California And Purposefully Availed Himself of California's Legal Benefits and Protections. ........................................................ 17

                            i      Saboundjian's Purposeful Direction....................... 17

                            ii     Saboundjian's Purposeful Availment..................... 19

                     c.     The Claims In This Action Arise Out Of Saboundjian's Contacts With California............................ 21

                     d.     Jurisdiction Over Saboundjian Is Reasonable Here. .......... 22

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663
Coblentz Patch Duffy & Bass LLP

|   |   | i | Defendant's Purposeful Interjection Into California | 22 |
|---|---|---|---|---|
|   |   | ii | Burden on Defendant | 23 |
|   |   | iii | Conflict With Sovereignty Of Defendant's State | 23 |
|   |   | iv | Forum State's Interest In Adjudicating The Dispute | 24 |
|   |   | v | Most Efficient Judicial Resolution | 24 |
|   |   | vi | Importance Of The Forum To Plaintiff | 25 |
|   |   | vii | Existence Of Alternative Forum | 25 |
|   | C. | | The Court Has Personal Jurisdiction Over Radionomy Group B.V. | 26 |
|   | D. | | In the Alternative, Personal Jurisdiction Over Saboundjian And Radionomy Group Is Proper Under Fed. R. Civ. P. 4(k)(2) | 27 |
| II. | | | THE COMPLAINT STATES A CLAIM AGAINST ALL DEFENDANTS. | 28 |
|   | A. | | The Complaint Pleads Facts Sufficient To State A Claim Against Saboundjian. | 28 |
|   | B. | | The Complaint Pleads Facts Sufficient To State A Claim Against Radionomy Group BV, Radionomy S.A., And Radionomy, Inc. | 30 |
| III. | | | PLAINTIFFS SHOULD BE PERMITTED EXPEDITED JURISDICTIONAL DISCOVERY TO FURTHER ESTABLISH JURISDICTION AS TO SABOUNDJIAN AND RADIONOMY GROUP B.V. | 32 |
| IV. | | | PLAINTIFFS SHOULD BE PERMITTED TO AMEND THEIR COMPLAINT IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTIONS. | 34 |
| CONCLUSION | | | | 35 |

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABM Indus., Inc. v. Zurich Am. Ins. Co.*,
   237 F.R.D. 225 (N.D. Cal. 2006) ........................................................................................16

*Adobe Sys. Inc. v. Childers*,
   Case No. 5:10-cv-03571-JF/HRL, 2011 WL 566812 (N.D. Cal. Feb. 14, 2011) .....................30

*Adobe Sys. Inc. v. Software Speedy*,
   Case No. C-14-2152-EMC, 2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ............................16

*In re American Apparel, Inc. S'holder Deriv. Litig.*,
   Case No. 10-065767-MMM, 2012 WL 9506072 (C.D. Cal. July 31, 2012) ..........................32

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996)..............................................................................................12

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir.1995)........................................................................................12, 22

*Bancroft & Masters, Inc. v. Augusta National, Inc.*,
   223 F.3d 1082 (9th Cir. 2000)................................................................................13, 21, 22

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir.)....................................................................................................20

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994)..............................................................................................29

*Brantley v. Boyd*,
   No. C 07-6139 MMC, 2013 WL 3766911 (N.D. Cal. July 16, 2013) ....................................13

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ....................................................................................................15, 22

*Calder v. Jones*,
   465 U.S. 783 (1984) ........................................................................................................16

*Carson v. Verismart Software*,
   Case No. C-11-03766-LB, 2012 WL 1038662 (N.D. Cal. Mar. 27, 2012)..............................30

*Click v. Dorman*,
   Case No. C-06-1936-PJH, 2006 WL 2644889 (N.D. Cal. Sept. 14, 2006)..............................23

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725, 734 (9th Cir. 1999)....................................................................................16

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

*Cybersell Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997)................................................................................18

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................................12

*Data Disc, Inc. v. Systems Technology Assoc., Inc.*,
    557 F.2d 1280 (9th Cir. 1977)............................................................................12

*Davis v. Metro Productions, Inc.*,
    885 F.2d 515 (9th Cir. 1989)....................................................................18, 19, 20

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001)......................................................3, 12, 13, 26

*EDAPS Consortium v. Kiyanichenko*,
    2005 WL 2000940 (N.D. Cal. Aug. 18, 2005)....................................................25

*Eminence Capitol LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003)......................................................................34, 35

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
    907 F.2d 911 (9th Cir. 1990)..............................................................................24

*Flo & Eddie Inc. v. Sirius XM Radio Inc.*,
    CV 13–5693 PSG (RZx), 2014 WL 4725382 (C.D. Cal. Sept. 22, 2014) ...................4

*Focht v. Sol Melia S.A.*,
    No. C-10-0906 EMC, 2010 WL 3155826 (N.D. Cal. Aug. 9, 2010) ........................33

*Foley v. Bates*,
    Case No. C-07-0402-PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007) .................31

*Forest Labs, Inc. v. Amneal Pharm., LLC*,
    No. 14–508–LPS, 2015 WL 880599 (D. Del. Feb. 26, 2015)...........................14, 15

*Fortaleza v. PNC Financial Services Group, Inc.*,
    642 F. Supp. 2d 1012 (2009)...................................................................3, 31

*Galbraith v. Cnty of Santa Clara*,
    307 F.3d 1119 (9th Cir. 2002)............................................................................29

*Graduate Management Admission Council v. Raju*,
    241 F. Supp. 2d 589 (E.D. Va. 2003)..............................................................18, 27

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003)............................................................................26

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984) .........................................13

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

*Hirsch v. Blue Cross, Blue Shield of Kansas City*,
    800 F.2d 1474 (9th Cir.1986)................................................................13

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..........................................................................12

*Invitrogen Corp. v. President & Fellows of Harvard Coll.*,
    Case No. C-07-CV-0878-JLSPOR, 2007 WL 2915058 (S.D. Cal. Oct. 4, 2007) ...................33

*ISI Intern., Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001)................................................................28

*j2 Global Communications, Inc. v. Blue Jay, Inc.*,
    Case No. C-08-4254-PJH, 2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ...............................*passim*

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ..........................................................................17

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987)................................................................15

*Laub v. U.S. Dep't of Interior*,
    342 F.3d 1080 (9th Cir. 2003)...........................................................33, 34

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001)................................................................29

*Loral Terracom v. Valley National Bank*,
    49 F.3d 555 (9th Cir. 1995))................................................................21

*Mattel, Inc. v. MCA Records, Inc.*,
    296 F.3d 894 (9th Cir. 2002)................................................................17

*McKeever v. Block*,
    932 F.2d 795 (9th Cir. 1991)................................................................31

*Melegrito v. CitiMortgage Inc.*,
    Case No. C-11-01765-LB, 2011 WL 2197534 (N.D. Cal. June 6, 2011)..........................31

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    243 F. Supp. 2d 1073 (C.D. Cal. 2003).................................................*passim*

*Mitan v. Feeney*,
    497 F. Supp. 2d 1113 (C.D. Cal. 2007)......................................................33

*N. California Collection Servs., Inc. of Sacramento v. Cent. Sierra Constr., Inc.*,
    No. CIV-S06-01899-DFL-DAD, 2007 WL 926839 (E.D. Cal. Mar. 26, 2007)....................24

*Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.*,
    308 U.S. 165 (1939)..........................................................................14

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (9th Cir. 2007)..................................................................12, 28, 29

*Openwave Systems, Inc. v. Fuld,*
    Case No. C-08-5683-SI, 2009 WL 1622164 (N.D. Cal. Jun. 6, 2009) ...................23, 24, 25, 26

*Orchid Biosciences, Inc. v. St. Louis University,*
    198 F.R.D. 670 (S.D. Cal. 2001)..................................................................33

*Panavision Intern., L.P. v. Toeppen,*
    141 F.3d 1316 (9th Cir. 1998)..................................................................17, 23

*Quokka Sports, Inc. v. Cup Int'l Ltd.,*
    99 F. Supp. 2d 1105 (N.D. Cal. 1999) ..................................................................28

*Ranza v. Nike,*
    793 F.3d 1059 (9th Cir. 2015)..................................................................24

*Rio Properties, Inc. v. Rio Intern. Interlink,*
    284 F.3d 1007 (9th Cir. 2002)..................................................................17, 19

*Roth v. Garcia Marquez,*
    942 F.2d 617 (9th Cir. 1991)..................................................................22, 26

*S.E.C. v. Blazon Corp.,*
    609 F.2d 960 (9th Cir. 1979)..................................................................14

*In re Sagent Technology, Inc.,*
    278 F. Supp. 2d 1079 (N.D. Cal. 2003) ..................................................................31

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004)..................................................................12, 15, 17, 24

*Semitool, Inc. v. Tokyo Electron Am., Inc.,*
    208 F.R.D. 273 (N.D. Cal. 2002) ..................................................................34

*Seven Arts Pictures, Ltd. v. Jonesfilm,*
    512 Fed.Appx. 419 (5th Cir. 2013) ..................................................................14

*Sher v. Johnson,*
    911 F.2d 1357 (9th Cir. 1990)..................................................................12

*Sinatra v. National Enquirer, Inc.,*
    854 F.2d 1191 (9th Cir. 1988)..................................................................17, 19, 22

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,*
    7 F.3d 1434 (9th Cir.1993)..................................................................4

*In re Tevis,* 2011 WL 7145712,
    (9th Cir. BAP 2011) ..................................................................31

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

*Urban Accessories, Inc. v. Iron Age Design and Import, LLC*,
 Case No. C-14-1529-JLR, 2015 WL 1510027 (W.D. Wash. Apr. 1, 2015) ............................29

*Uttarkar v. Bajaj*,
 Case No. 14-CV-02250-LHK, 2016 WL 393351 (N.D. Cal. Feb. 2, 2016) ............................20

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
 556 F.2d 406 (9th Cir. 1977).......................................................................................33

*Winery v. Graham*,
 Case No. C-06-3618-MHP, 2007 WL 963252 (N.D. Cal. Mar. 29, 2007) ........................16, 20

*Zherebko v. Reutskyy*,
 Case No. C-13-00843-JSW, 2013 WL 4407485 (N.D. Cal. Aug. 12, 2013) ............................25

**Statutes & Rules**

17 U.S.C. § 301(c)..........................................................................................................4

Cal. Corp. Code § 1502(b) .........................................................................................7, 8

Cal. Corp. Code §§ 1502(b), (e) ......................................................................................8

Cal. Corp. Code §§ 1502(b), (j) .....................................................................................13

Cal. Corp. Code § 2114(d) .............................................................................................8

Civil Rule 8(a)(2) ........................................................................................................31

Fed. R. Civ. P. 4(k)(2) .........................................................................................18, 27, 28

Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ...................................................................... *passim*

Fed. R. Civ. P. 12(d)....................................................................................................29

Fed. R. Civ. P. 15(a) ....................................................................................................34

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   Plaintiffs Arista Music, Arista Records, LLC, LaFace Records LLC, Sony Music

2   Entertainment, Sony Music Entertainment US Latin LLC, and Zomba Recording LLC

3   (collectively referred to as "Sony Music" or "Plaintiffs") submit this consolidated memorandum of

4   law in opposition to the motions to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(2)

5   and 12(b)(6), filed by Defendants Radionomy, Inc., Radionomy S.A., Radionomy Group B.V.,

6   (collectively the "Radionomy Entities") and Alexandre Saboundjian (collectively "Defendants").

7   (Dkt. 31, 32.)

8                                           **INTRODUCTION**

9   At its core, this lawsuit is simple:  Sony Music is seeking an injunction and damages for

10  the massive copyright infringement that the Radionomy Entities and their founder/CEO,

11  Alexander Saboundjian, are perpetrating in the United States by duplicating, publicly performing,

12  and publicly displaying thousands of Sony Music's copyrighted works without permission.

13  Defendants are doing this by streaming sound recordings and displaying album cover art to

14  millions of internet users – and enabling anyone to create their own Radionomy internet radio

15  stations using these works  – through their online portal Radionomy.com and other websites (the

16  "Radionomy Service").  There is no apparent defense to this willful, continuing infringement.

17  Accordingly, defendants Alexandre Saboundjian and Radionomy Group, B.V., ("Radionomy

18  Group") have moved to dismiss on the theory that they are beyond the reach of this Court.  The

19  other two defendants, Radionomy, Inc. and Radionomy, S.A., have expressly acknowledged that

20  they ***are*** subject to this Court's jurisdiction, so they resort to challenging the complaint on the

21  meritless theory that it does not provide fair notice of the claims being alleged against them.

22  Saboundjian is unquestionably subject to personal jurisdiction in California.  He legally

23  represented to the California Secretary of State, repeatedly, that he is a ***California resident*** when

24  he designated himself as the registered agent for service of process on San Francisco-based

25  Radionomy, Inc.  Under the standard governing this motion – that all disputed facts are resolved in

26  the plaintiff's favor – this representation by itself is sufficient to establish jurisdiction.  Even if that

27  were not the case, as a founder of the Radionomy Service and CEO of all three entities,

28  Saboundjian is subject to jurisdiction as the creator and, to this day, the guiding force behind the

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

infringing activity.  Since the parties are in agreement that operation of this service confers jurisdiction over Radionomy, Inc. and Radionomy, S.A., Saboundjian's personal role in the creation and management of that service, including the decision to abandon all pretense of compliance with U.S. licensing requirements, confers jurisdiction over him as well.  The fiduciary shield doctrine Saboundjian invokes does not apply to an employee or officer who controls or directly participates in the conduct that is the basis for the lawsuit.  That is precisely what the Complaint alleges, and what available facts confirm.  Since Saboundjian does not deny the allegation of control and participation, that allegation is dispositive even without the unrefuted facts set forth below.

Nor does Saboundjian's barebones declaration in support of Radionomy Group's motion suffice to place that entity beyond the Court's reach.  Even with the limited facts available prior to discovery, it is clear that Saboundjian and the Radionomy Entities have not respected the distinctions Saboundjian seeks to erect after the fact.  For example, when Saboundjian visited the U.S. office of Sony Music with the aim of obtaining direct licenses for the Radionomy Service, the business card he provided did not reference Radionomy, Inc. or Radionomy, S.A.  Rather, it represented him to be the CEO of "Radionomy Group."  Similarly, when one visits www.radionomy.com – the portal to the infringing Radionomy Service – and clicks "about us," one is taken to www.radionomygroup.com, which touts the Radionomy Service and the fact that the Radionomy Group has a "global footprint with operations in the United States, France, Spain and Germany."  Indeed, until recently, that website identified Radionomy, Inc.'s U.S. Headquarters in San Francisco as one of Radionomy *Group's* offices.  The facts support the inference that Radionomy Group is far from a passive foreign owner of a U.S.-based business – through Saboundjian, it is actively involved in the conduct that lies at the heart of this case.

For these reasons, the jurisdictional motions should be denied outright.  If, however, the Court is not inclined to reject the motions on this record, Sony Music requests leave to take expedited discovery on the jurisdictional issue.  In fact, Radionomy Group has already agreed, in connection with a stipulation to extend time, not to resist discovery into jurisdiction.  Sony Music is confident that additional facts will clearly establish this Court's jurisdiction over Saboundjian

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  and Radionomy Group.

2      Finally, Defendants' motions under Rule 12(b)(6) are utterly meritless.  The notion that

3  Defendants lack fair notice of the claims being alleged is far-fetched to say the least.  Again, the

4  infringing nature of the Radionomy Service could hardly be clearer – or more clearly alleged.  As

5  the creator and continuing decision-maker for this service – including his personal refusal to cease

6  streaming Sony Music's protected works despite acknowledging that his company has no

7  permission to do so – Saboundjian cannot be under any illusions about the basis for the claims

8  here.  Similarly, the Radionomy entities are entirely interchangeable for these purposes:  they are

9  the business entities that run and/or control the service that is massively infringing every day.

10  Without question, the Complaint gives more than fair notice to all four defendants.  Defendants'

11  motions to dismiss for failure to state a claim should be denied.

12  **RELEVANT FACTS[1]**

13  I.    **The Radionomy Service**

14      The Radionomy *Group* website describes the Radionomy Service as:

15      [A] free groundbreaking platform that is changing the way people
        from around the world create, discover, and listen to Internet radio.
16      Radionomy provides everyone from artist and celebrities to
        professional broadcasters and music lovers with the tools and
17      infrastructure to create, broadcast, promote and monetize their own
        online radio stations completely free of charge.

18  (Declaration of Jeffrey Knowles In Support of Opposition ("Knowles Decl." ¶ 2, Ex. A).)

19      That is, the service not only allows any internet user anywhere to listen to popular music, it

20  enables them to program and "monetize" their own internet stations.  Users interested in creating

21  their own station can supply it with music in two ways:  (a) upload copies of music in their

22  possession to Radionomy's servers; or (b) select it from Radionomy's central music library, which

23  includes innumerable tracks owned by Sony Music.  (Declaration of Jeff Walker In Support of

24  _____

25  [1] The facts set forth herein are uncontroverted allegations of the Complaint, facts admitted by
    Defendants, or facts supported by Plaintiffs' evidence and declarations filed in support of this
26  Opposition.  As a result, these facts must be taken as true, with any conflicting facts between the
    parties being resolved in Plaintiffs' favor.  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir.
27  2001).

28

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Opposition ("Walker Decl.") ¶ 12.)  Users may play music from this library on demand, ostensibly in order to program their stations.  (*Id.*)  Radionomy then streams the music, and accompanying album art, to listeners and viewers.  (*Id.*)  Radionomy sells advertising, and shares some of this revenue with the stations created on its service, based on how many listeners those stations attract.[2]  (*Id.*, Ex. H at §13 & Appx. 1.)

The Radionomy Entities have exploited thousands, and likely tens of thousands, of tracks owned by Sony Music, and have streamed those recordings millions, and likely hundreds of millions, of times.[3]  (Walker Decl. ¶ 13.)  There has not even been a pretense of permission to do this since at least the start of 2015.[4]

## II.   Radionomy's Physical Presence And Other Contacts With California

As common sense suggests, a global internet service of this scale has substantial impact in California.  While discovery has not yet disclosed precisely how many stations are created by California residents, how much advertising revenue from the Radionomy Service is paid by California entities or paid due to usage of the service in California, or how many listeners are based in California, a brief check on Radionomy's available sources reveals multiple California-

---

[2] Radionomy maintains a YouTube channel with various videos about its service, including video and tutorials instructing viewers how to create and program a Radionomy station.  (Knowles Decl. ¶ 22, Ex. T.)

[3] According to the Radionomy Group website, which touts the rapid growth of listeners, the Radionomy service logged 47,599,352 listening hours in **one month** in 2013.  (Knowles Decl. Ex. C (November 1, 2013 timeline entry).)

[4] Until January 2015, Radionomy purported to invoke the compulsory statutory license available under Section 114 of the Copyright Act, and purported to report and pay royalties to the digital performing rights organization SoundExchange.  (Walker Decl. ¶¶ 5, 8 & Ex. D.)  Notably, however, Radionomy continues to represent to its users that Radionomy **has** licensed all content performed on the service.  (Knowles Decl. ¶ 3, Ex. B at 2.)  Users are therefore led to believe, falsely, that they are protected from infringement liability because Radionomy has complied with all licensing requirements.  Moreover, a Section 114 license is inapplicable to pre-1972 sound recordings, which are governed by state law and require a direct U.S. license – something Radionomy has never purported to have.  *See Flo & Eddie Inc. v. Sirius XM Radio Inc.,* CV 13–5693 PSG (RZx), 2014 WL 4725382, at *11 (C.D. Cal. Sept. 22, 2014) (citing *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.,* 7 F.3d 1434, 1439–40 (9th Cir.1993); 17 U.S.C. § 301(c)).

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

specific stations.  (Knowles. Decl. ¶ 18, Ex. Q.)  Similarly, anyone in California with a broadband connection can readily access sound recordings from major Sony artists, from Beyonce to Meghan Trainor to Michael Jackson, on the Radionomy Service.  (Declaration of Lesbia Duarte ("Duarte Decl." In Support of Opposition, ¶ 2.)  The impact here is obvious and undeniable – indeed, Defendants make no effort to deny it.

The Radionomy Group website provides a "timeline" describing the history of the service. (Knowles Decl. ¶ 4, Ex. C.)  According to that timeline, Saboundjian and three other individuals founded Radionomy in Europe in 2007, and the service launched U.S. operations from San Francisco in 2012.  (Id.)  Indeed, Radionomy's September 2012 press release announcing the opening of the San Francisco office quotes the company's Vice President of Business Development as saying San Francisco "is the perfect place to base our U.S. operations and a perfect launching pad for our U.S. introduction."  (Knowles Decl. ¶ 5, Ex. D; see also Compl. ¶¶ 14, 20; Knowles Decl. Ex. E; Declaration of Alexandre Saboundjian (Dkt. 31-1) at ¶ 7).)  According to the same spokesman, "the San Francisco office [will] focus on sales, marketing, further platform development, and establishing new partnerships."  (Knowles Decl. ¶5, Ex. D.)[5]

In early 2013, Defendants formed Radionomy, Inc., as a Delaware corporation, and registered the company to do business in the State of California.  (Knowles Decl. ¶¶ 6-10, Exhs. E-I.)  In its April 2013 submission to the California Secretary of State, Radionomy, Inc. identified its principal place of business as 181 Fremont Street, San Francisco, California.  (Knowles Decl. ¶ 7, Ex. F.)  The submission also identified Saboundjian as CEO, and his address was also 181 Fremont Street.  (Id.)  This information was reiterated in Radionomy's 2014 Statement of Information submitted to the Secretary of State.  (Id. at ¶ 8, Ex. G.)  In the April 2015 "Statement of Information," Radionomy indicated it had moved its California headquarters to 543 Howard

---

[5]  This same officer, Thierry Ascarez, appeared in San Francisco in 2013 at "Belgian Tech Pitch Night," and explained that Radionomy was "created in Belgium in 2008, and we have been based in San Francisco since 2012."  (Knowles Decl. ¶ 24, Ex. W.)

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   Street, 4th Floor, San Francisco, CA 94105.  (*Id.* at ¶ 9, Ex. H.)[6]

2        Radionomy did, in fact, conduct its business out of San Francisco.  Saboundjian admits that

3   he visited Radionomy's San Francisco headquarters on multiple occasions, indicating that over the

4   past five years he has traveled to California once or twice a year to transact business.  (Dkt. 31-1,

5   ¶ 14.)  This is consistent with Radionomy's public statement that its San Francisco headquarters

6   was to be initially staffed by Radionomy's European staff.  (Knowles Decl. ¶ 5, Ex. D.)  Checks

7   issued by Radionomy to SoundExchange to cover royalties for sound recordings streamed in the

8   U.S. via the Radionomy Service bore the address of its headquarters in San Francisco – and were

9   drawn on San Francisco-based Bank of the West.  (Knowles Decl. ¶ 11, Ex. J; ¶ 26, Ex. Z.)  In

10  fact, contrary to Mr. Saboundjian's assertion that Radionomy closed its San Francisco office in

11  June 2015, it issued a check to SoundExchange bearing that address as recently as February 2016.[7]

12  (*Id.*)  There is no reason to believe that Radionomy did not do exactly what it said it would from

13  its San Francisco base:  launch its U.S. service, conduct sales, marketing, platform development

14  and other functions critical to its U.S. business.  (Knowles Decl. ¶ 5, Ex. D.)  Certainly

15  Saboundjian makes no effort to deny it in his declarations seeking to minimize his and his

16  companies' contacts with California.[8]

_____

[6] Evidently seeking to deprive this Court of jurisdiction retroactively, a few weeks ago (well after this lawsuit was filed) Radionomy, Inc, surrendered its certificate to transact business in California.  (Dkt. 31-1, ¶ 9; Knowles Decl. Ex. K.)

[7] Prior to this, Radionomy had tendered no payment to SoundExchange since June 2015. (Knowles Decl. ¶ 11, Ex. J.)  This payment was tendered shortly after Sony Music filed this lawsuit, and appears to have been an attempt to retroactively cure more than a year of willful infringement.  (*Id.*).

[8] In fact, Saboundjian's declaration is more notable for what it omits than what it includes.  For example, he confined his review of business travel records to 2014-2015 even though Radionomy's San Francisco headquarters opened in 2012, and Radionomy did not surrender its license to do business in California until April 2016.  Nor does he describe the length of his stays, or what he did while he was here on business.  Similarly, while he denies ever having been a California resident, he provides no explanation for why he repeatedly claimed that he was.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

III.   **Saboundjian's Official And Repeated Representations That He Is A Resident Of California**

Upon registering to do business in California, Radionomy, Inc., was required to identify an agent for the service of process.  The California Corporations Code specifies that the agent may be a qualifying corporation or "a natural person residing in this state."  Cal. Corp. Code § 1502(b).  In accordance with the statute, the official Secretary of State form requires that the named agent for service of process, if a natural person, be a *resident of California*.  (*Id.*; *see also* Knowles Decl. ¶ 7, Ex. F.) The form is not ambiguous: it instructs the applicant that "[y]ou may list any adult who lives in California."  (*Id.*)

Saboundjian elected to identify himself personally as the corporation's agent for service of process.  Thus, Saboundjian expressly and necessarily represented that he was a resident of the State of California.  (Knowles Decl. ¶ 7, Ex. F.)  This designation was not a mistake – Saboundjian himself certified the truth and correctness of the designation and other information on the form by personally signing the form as the CEO of Radionomy, Inc.  (*Id.*)

Moreover, Saboundjian not only claimed California residency in 2013; he listed himself again as the California resident agent on Radionomy, Inc.'s 2014 and 2015 Statements of Information filed with the Secretary of State as well.  (Knowles Decl. ¶¶ 8-9, Exhs. G & H.)[9] Thus, by his own admission – and contrary to his declaration filed in this action – Saboundjian resided in California at least from April 2013 until the filing of the certificate of surrender in April 2016, during the time infringing conduct at issue in this litigation was occurring and through the filing of the Complaint.[10]   (*Id.*)  There was no reason for Saboundjian to list himself as a

---

[9] The 2014 and 2015 forms contain slightly different wording, but with no less clarity require that, "[i]f the agent is an individual, the agent must reside in California and Item 11 must be completed with a California street address, a P.O. Box address is not acceptable."  (Knowles Decl. ¶¶ 7-9, Exhs. F, G, & H.)

[10] The California Corporations Code provides that a filing as to a corporation's status, as well as its agent for service of process, is effective until a new filing designates a new agent for service of process, or until a certificate of surrender is filed, regardless of whether the corporation previously (footnote continued)

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

1   California resident if it was not true – he could easily have designated a corporate agent for service

2   of process (Cal. Corp. Code § 1502(b)), *just as Radionomy Inc. had previously done in Delaware*.

3   (Knowles Decl. ¶ 10, Ex. I.)

4   **IV.     Saboundjian's Control Over and Direct Participation In The Infringing Conduct**

5           Having founded the Radionomy Service, Saboundjian is currently the Chief Executive

6   Officer of Radionomy, Inc., Radionomy S.A., and Radionomy Group.  (Dkt. 31-1 at ¶¶ 6, 12-13;

7   Dkt. 32-1 at ¶ 1).)  He is also a shareholder in Radionomy Group, which owns Radionomy, S.A.,

8   which in turn owns Radionomy, Inc.  (Knowles Decl. ¶ 6, Ex. L; Dkt. 32-1 at ¶ 11.)  As the

9   founder, owner and executive officer of *all* of the Radionomy entities, Saboundjian actively

10  manages the Radionomy Service.

11          Most notably, Saboundjian has taken the lead in Radionomy's efforts to obtain direct

12  licenses from Sony Music and at least one other rights holder for the exploitation of sound

13  recordings on the Radionomy Service.  In late 2015, after Sony Music had issued takedown

14  notices for several Radionomy stations that had not been complying with the statutory license

15  requirements, Radionomy contacted Sony to seek direct licenses due to the "specificities" of the

16  Radionomy Service. [11]  (Walker Decl. ¶ 2-8, Exhs. A-E.)

17          After a preliminary telephone call between the parties, Sony Music requested in an email,

18  which was copied to Saboundjian, that Radionomy remove all stations from an internet radio

19  station aggregator known as TuneIn, and asked Radionomy to let Sony Music know as soon as

20  possible whether it would do so.  (Walker Decl., Exhs. B-C.)  After a follow-up prompt from Sony

21  Music a week later, Saboundjian responded by requesting a meeting.  (*Id.*)

22          In early 2016, Saboundjian visited Sony Music's offices in New York City for the purpose

23  _____

24  ceased transacting business in California.  Cal. Corp. Code §§ 1502(b), (e); 2114(d).

25  [11] Presumably Radionomy was referring to certain elements of its service, such as the ability of
    users to stream music on demand ostensibly to program stations, and its transmission of stations

26  that only play a single artist, are not eligible for the statutory license.  To avoid infringement and
    retain its business model, Radionomy needs a direct license from rights holders rather than a

27  statutory license.

28

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   of negotiating such licenses.  (Walker Decl. ¶¶ 4-8; Exhs. C-D.)  Saboundjian made clear he had

2   decided to cease any U.S. royalty payments – but continued exploiting Sony Music's copyrighted

3   works in U.S. transmissions – when the favorable rates available to smaller webcasters expired at

4   the end of 2014.  (*Id.* ¶ 5.)  He also refused to supply a list of Radionomy stations available

5   through TuneIn.  (*Id.* at 6.)  Most importantly, he refused Sony Music's demand to cease

6   Radionomy's transmissions of Sony Music sound recording from such stations.  (*Id.*)

7        In the meeting, Saboundjian also indicated that he was planning to, or already had, met

8   with representatives of the Universal Music Group to obtain licenses for that company's works.

9   (Walker Decl. ¶¶ 7-9, Ex. E.)  In a subsequent email, he confirmed that he had done so, naming

10   two Universal executives who are based in California.  (*Id.* at ¶ 10 & Ex. G.)

11        In the course of the meeting, Saboundjian never distinguished among the Radionomy

12   Entities.  (Walker Decl. ¶ 6.)  To the contrary, the business card he provided identified him as the

13   CEO of "Radionomy Group."  (Walker Decl. ¶ 6, Ex. F.)  In fact, his conduct confirmed Sony

14   Music's impression that there was only a single Radionomy business entity controlling the service.

15   (*Id.*)  Despite several follow-up communications, Saboundjian never secured U.S. licenses of any

16   kind for the use of Sony Music's works.  (Walker Decl. ¶ 8.)

17        Saboundjian's role in spearheading the unsuccessful effort to obtain direct U.S. licenses is

18   consistent with his personal involvement in the details of copyright administration.  For example,

19   in March 2012, Saboundjian personally signed the Notice of Use of Sound Recordings under

20   Statutory License ("NOU") filed with the U.S. Copyright Office in connection with the

21   Radionomy Service.  (Knowles Decl. ¶ 14, Ex. M.)  Sony Music is in possession of another

22   document reflecting Saboundjian's personal involvement in rights administration, but the

23   Radionomy Entities provided it subject to Sony Music's agreement not to use it outside the

24   context of settlement discussions (without prejudice to Sony Music's ability to obtain it through

25   discovery).  (Knowles Decl. ¶ 20.)  When Sony Music requested permission to use this

26   unprivileged, fully discoverable document in this briefing for the purpose of showing

27   Saboundjian's and Radionomy Group's direct involvement in infringement, the Radionomy

28   Entities refused.  (*Id.*)

1    Other facts further undercut Saboundjian's vague and conclusory assertion that he "never

2  managed the day-to-day operations of Radionomy Inc.'s office in California." (Dkt. 31-1, ¶ 10.)

3  Whatever it may mean to manage an *office*, available information supports the inference that

4  Saboundjian is very involved in the day-to-day management of the *companies* that operate the

5  Radionomy Service in the U.S. For example, he personally posted on his own Twitter feed at least

6  two U.S. job listings, one for an "Audience Manager" in San Francisco and one for a "Community

7  Manager" in New York. (Knowles Decl. ¶ 23, Exhs. U, V.)

8    In short, Saboundjian is anything but a passive foreign owner or executive who merely

9  delegates to others the pertinent decisions and tasks for the U.S operations. Rather, he founded the

10  infringing service, is both an owner and the ultimate decision-maker for all three business entities

11  operating or overseeing that activity, and he has been personally involved in dealing with precisely

12  the issues at stake in his lawsuit – from negotiating with U.S. rights holders to authoring filings

13  with the U.S. Copyright Office. (Walker Decl. ¶¶ 4-11, Exhs. C-G; Knowles Decl. Ex. M.) He

14  even gets involved in recruiting operational personnel. (Knowles Decl. ¶ 23, Exhs. U, V.)

15  **V.    Radionomy Group's Contacts With California**

16    While Radionomy, Inc. and Radionomy, S.A., have conceded that they are subject to

17  personal jurisdiction in California, Radionomy Group asserts that it has no contacts in California.

18  (Dkt. 32-1.) But, as Defendants also concede, "Radionomy Group owns 99% of Radionomy S.A.,

19  and Radionomy, Inc. is wholly owned by Radionomy S.A." (*Id.* at ¶ 11.) Although Defendants

20  claim that Radionomy Group does not control the day-to-day operations of the other Radionomy

21  entities, and that it maintains certain separate corporate formalities, the distinction among the

22  entities is blurred beyond recognition by the way Radionomy actually conducts business.

23    For example, while Defendants assert that Radionomy Group does not operate the

24  Radionomy Service (Dkt. 32-1, at ¶¶ 12, 15), a visit to www.radionomy.com  suggests the

25  opposite. The "About Us" link at the bottom of the page does not open to a page describing

26  Radionomy S.A. or Radionomy Inc.; rather, it opens up a webpage entitled

27  www.radionomygroup.com/en. (Knowles Decl. ¶ 2, Ex. A.) From there, clicking another "About

28  Us" link at the top of the page opens a page entitled www.radionomygroup.com/en/about-us that

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

1   provides a timeline relevant to the "Radionomy Group."  (*Id.* at ¶ 4, Ex. C.)  This timeline

2   includes, among other things, the creation of Radionomy by Saboundjian in September 2007,

3   launches of various Radionomy websites and applications, and the opening of  "Radionomy's"

4   San Francisco office in 2012 (with no specific reference to "Radionomy, Inc." or "Radionomy

5   S.A.").[12]  (*Id.*)  Moreover, clicking the "Contact" link at the top of the www.radionomygroup.com

6   website opens a page showing the various offices of "Radionomy Group," which include

7   Radionomy Group's acknowledged headquarters in the Netherlands, but also Radionomy S.A.'s

8   purported office in Belgium.  (Knowles Decl. ¶¶ 15, Ex. N.)  While no longer displayed on this

9   Radionomy Group contact page, an archived internet page for this same site from 2014 also

10  displayed the address for Radionomy's San Francisco office as an office address for the

11  Radionomy Group.  (Knowles Decl. ¶ 16, Ex. O.)  Similarly, the entity identified as offering the

12  Android version of the Radionomy app is not "Radionomy, Inc." or "Radionomy, S.A.," but

13  simply "Radionomy."  (Knowles Decl. ¶ 21, Ex. S.)

14       Saboundjian acknowledges that he is the CEO of Radionomy Group.  (Dkt 32-1, ¶ 1.)  It is

15  unclear how Radionomy Group operates except through Saboundjian.  In any case, Saboundjian

16  was clearly acting in that capacity when he met with Sony representatives in the U.S. to negotiate

17  direct licenses, as indicated by the business card he provided identifying him as such.  (Walker

18  Decl. ¶ 10, Ex. F.)  Further blurring the distinction among the entities, the address on the business

19  card is Radionomy S.A.'s Belgium office, rather than Radionomy Group's Netherlands

20  "headquarters."  (*Id.*)

21       Similarly, the signature block on Saboundjian's email seeking to negotiate licenses says

22  simply "radionomy – a vivendi village company."  (Walker Decl. Ex. G.)  The reference to being a

23  "vivendi" company is significant, because Vivendi did not acquire an interest in Radionomy S.A.

24  or Radionomy, Inc. – only in Radionomy Group.  (*See* Knowles Decl. Exhs. D, R.)

25       In short, the distinction among the Radionomy entities – which share executives, owners,

26

27  [12] In fact, almost nothing in the timeline specifies any particular Radionomy entity.  Everything
    simply refers to "Radionomy" regardless of what entity is actually involved.

28

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   offices, websites, and no doubt countless other resources  – is non-existent in terms of the way

2   these entities hold themselves out to the public and to other businesses.

3                                              **ARGUMENT**

4   I.      **THE COURT HAS PERSONAL JURISDICTION OVER ALL DEFENDANTS.**

5           A.      **Applicable Legal Standards**

6               In addressing a personal jurisdiction motion, the court should consider evidence presented

7   in affidavits of the parties and may order discovery on the jurisdictional issues.  *Doe v. Unocal*

8   *Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Systems Technology Assoc.,*

9   *Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  Importantly, where jurisdiction is challenged on

10  written motion rather than in an evidentiary hearing, Plaintiff "need make only a prima facie

11  showing of jurisdictional facts."  *Doe*, 248 F.3d at 922 (citing *Ballard v. Savage*, 65 F.3d 1495,

12  1498 (9th Cir.1995)); *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  "That is, the

13  plaintiff need only demonstrate facts that *if true* would support jurisdiction over the defendant."

14  *Doe*, 248 F.3d at 922 (emphasis added).  Conflicts between the facts contained in the parties'

15  affidavits, as well as uncontroverted allegations in the complaint, *must* be resolved in the

16  plaintiff's favor.  *Id.; see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

17  Cir. 2004) (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

18  Similarly, uncontradicted allegations in the complaint, together with reasonable inferences taken

19  therefrom, are assumed to be true.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).

20              Because California's long-arm jurisdictional statute is coextensive with federal due process

21  requirements, the jurisdictional analyses under state law and federal due process are the same.

22  *Daimler AG v. Bauman,* 134 S. Ct. 746, 748 (2014); *Schwarzenegger*, 374 F.3d at 800-01.  Thus,

23  for this Court to exercise personal jurisdiction over Defendants, they need only have "minimum

24  contacts" with California such that the exercise of jurisdiction does not offend "traditional notions

25  of fair play and substantial justice."  *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

26  310, 316 (1945)).

27

28

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**B.   The Court Has Personal Jurisdiction Over Saboundjian**

**1.   As A California Resident Who Owned And Operated A California-based Company, Saboundjian is Subject To General Personal Jurisdiction.**

A court may exercise general personal jurisdiction when the defendant is a resident or domiciliary of the forum state, or when the defendant's contacts with the forum state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Brantley v. Boyd*, No. C 07-6139 MMC, 2013 WL 3766911, at *3 (N.D. Cal. July 16, 2013)). Other factors to be taken into account for general jurisdiction include whether the defendant is incorporated or licensed to do business in the forum state, has offices, property, employees or bank accounts there, pays taxes, advertises or solicits business, or makes sales in the state. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 243 F. Supp. 2d 1073, 1083-84 (C.D. Cal. 2003) (citing *Hirsch v. Blue Cross, Blue Shield of Kansas Cit*y, 800 F.2d 1474, 1478 (9th Cir.1986); *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).

Here, Saboundjian represented to the California Secretary of State that he was a California resident from April 2013 until April 2016, in connection with the establishment of Radionomy, Inc.'s U.S. headquarters in San Francisco. (Knowles Decl. ¶¶ 7-9, 12, Exhs. F-H, K; *see also* Cal. Corp. Code §§ 1502(b), (j).) This residency is consistent with Saboundjian's general hands-on management of Radionomy, as well as Radionomy's publicized plan to staff its "U.S. Headquarters" in San Francisco with staff from its European offices. (Knowles Decl. ¶ 5, Ex. D.)

These facts are sufficient to establish general jurisdiction over Saboundjian. *Bancroft,* 223 F.3d at 1086 (general jurisdiction is proper where contacts "approximate physical presence"). The facts here show that Saboundjian not only "approximated" a physical presence in California, he *had* one for three years directly connected to Radionomy Inc.'s business in California. (Knowles Decl. ¶¶ 7-9, Exhs. F-H.) Any conflict between these facts and Saboundjian's self-serving declaration denying contacts or residency *must* be resolved in favor of Plaintiffs on a motion to dismiss under Rule 12(b)(2). *Doe,* 248 F.3d at 922.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Indeed, the circumstances here parallel those found sufficient to establish general personal jurisdiction in *Seven Arts Pictures, Ltd. v. Jonesfilm,* 512 Fed.Appx. 419 (5th Cir. 2013). There, an individual defendant argued that he was not subject to jurisdiction in Louisiana federal court because he was a California resident. The court, however, relied on his *representations* of residence – including having made such a representation, under the law, by virtue of being a registered agent for service of process on a Louisiana company – along with other forum contacts to conclude that he was subject to general personal jurisdiction in the state. *Jonesfilm,* 512 Fed.Appx. at 424. While the defendant disputed these facts, the court relied on the principle requiring resolution of conflicts in favor of the plaintiff to conclude that the plaintiff had met its burden. *Id.*[13]

An alternative basis for asserting general personal jurisdiction of Saboundjian is the traditional ground of consent. *See, e.g., S.E.C. v. Blazon Corp.*, 609 F.2d 960, 965 (9th Cir. 1979) (holding that a defendant "can confer jurisdiction over his person upon a court otherwise lacking that jurisdiction by expressly consenting to it") (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.,* 308 U.S. 165, 167-68 (1939)); *Forest Labs, Inc. v. Amneal Pharm., LLC,* No. 14–508–LPS, 2015 WL 880599, at * *4–10 (D. Del. Feb. 26, 2015) (concluding that compliance with state statute requiring appointment of agent for service of process was consent to personal jurisdiction), adopted by J. Stark, 2015 WL 1467321 (D.Del. Mar. 30, 2015).[14] Regardless of whether

[13] No doubt Saboundjian will seek to distinguish *Seven Arts* on the ground that the defendant in that case owned and managed real estate in the forum state. But the analog here is that Saboundjian owns and manages a *company* that had its U.S. headquarters in California. Indeed, the facts here are stronger because Saboundjian's company is at the center of this lawsuit, where the defendants contacts in *Jonesfilm* were unrelated to the proceeding.

[14] The argument for consent here is much stronger than in *Forest Labs*. In that case, the court found that a corporation's appointment of an agent for service of process was sufficient "consent" under Delaware law to establish personal jurisdiction over the corporation. Here, by contrast, it is not Radionomy's mere designation of Saboundjian as an agent for service of process that establishes personal jurisdiction by consent, but, rather, Saboundjian's own repeated representations as to his California residency made in connection with the establishment of Radionomy's U.S. Headquarters in California that constitute Saboundjian's individual consent to personal jurisdiction here.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  Saboundjian's repeated legal representations to the California Secretary of State that he was a

2  California resident were true, they should properly be deemed a waiver of any objection to the

3  assertion of jurisdiction over him.  Saboundjian's representations of residency in connection with

4  Radionomy's California-based U.S. Headquarters were entirely voluntary acts that he should have

5  properly understood could result in his being haled into Court in California.[15]  *Id.*

**2.**     **Saboundjian's Contacts With California Establish Specific Personal Jurisdiction Over Him In This Case.**

8  Even if Saboundjian's repeated representations of California residency and other extensive

9  contacts with the state were not sufficient by themselves to confer general jurisdiction,

10  Saboundjian is nonetheless subject to specific personal jurisdiction in this action.  The Ninth

11  Circuit uses a three-prong test for analyzing this issue: (1) the defendant must "purposefully

12  direct" his activities or consummate some transaction with the forum, or must perform some act

13  by which he "purposefully avails" himself of the privilege of conducting activities in the forum,

14  thereby invoking the benefits and protection of its laws; (2) the claim must arise out of or relate to

15  the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

16  *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  If

17  the plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a

18  compelling case" that the exercise of jurisdiction would not be reasonable.  *Schwarzenegger*, 374

19  F.3d at 802 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985))).

**a.**     **Saboundjian's Contacts With California Go Well Beyond His Mere Status As An Officer Or Director Of The Radionomy Defendants.**

22  Defendants have conceded that Radionomy Inc. and Radionomy S.A. are subject to

23  personal jurisdiction in California – they expressly waived any such objections.  (Knowles Decl.

---

26  [15] Saboundjian's business contacts with California are evidently nothing new.  His LinkedIn
27  profile shows that he has served as CEO of at least two California-based companies (other than
Radionomy Inc.) since the early 1990's.  (Knowles Decl. ¶ 25, Exhs. X, Y.)

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

¶ 17, Ex. P.) [16] Saboundjian, however, argues that his status as the CEO of these companies does not extend the court's reach to him. (Saboundjian Mot. at 8-9.) That is, he invokes the "fiduciary shield" doctrine. (*Id.*)

While it is true that an individual's status as an employee or officer does not by itself subject that employee or officer to jurisdiction in any forum where their employer does business, it is also true that "their status as employees does not somehow insulate them from jurisdiction." *j2 Global Communications, Inc. v. Blue Jay, Inc.*, Case No. C-08-4254-PJH, 2009 WL 29905, at *5 (N.D. Cal. Jan. 5, 2009) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)); *Winery v. Graham,* Case No. C-06-3618-MHP, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) (same)). Rather, "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Id.*; *Wolfe Designs,* 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 734 (9th Cir. 1999)). Personal liability and, thus, personal jurisdiction, is proper where corporate officers are the "guiding spirit" behind the wrongful conduct, or the "central figure" in the challenged corporate activity. *j2Global,* 2009 WL 29905, at *5, *8 (extending personal jurisdiction over company's president where he participated and/or oversaw all functions of the defendants' wrongful conduct); *Wolfe*, 322 F. Supp. 2d at 1072 (extending personal jurisdiction over company's executive and 50% shareholder where she made the "final decision" on relevant conduct and was the "prime moving force" in policies and decisions at the company); *Adobe Sys. Inc. v. Software Speedy*, Case

---

[16] As a condition of a stipulated extension for Defendants' time to respond to the Complaint, Radionomy S.A. and Radionomy Inc. waived all objections to jurisdiction and venue. (Knowles Decl. ¶ 17, Ex. P.) This communication between counsel for Plaintiffs and counsel for Defendants Radionomy Inc., Radionomy S.A. and Radionomy B.V. is admissible because it is not offered to prove any issue with respect to liability for the underlying claims, but rather, to show that Radionomy Inc. and Radionomy S.A. have agreed not to challenge jurisdiction. *See ABM Indus., Inc. v. Zurich Am. Ins. Co*., 237 F.R.D. 225, 228 (N.D. Cal. 2006) (Rule 408 will not preclude admissibility of the statements if the evidence is not offered to prove liability for, or validity of, a claim or its amount. By its terms, the Rule does not require exclusion of any evidence otherwise discoverable simply because it is presented in the course of compromise negotiations).

1   No. C-14-2152-EMC, 2014 WL 7186682, at *5 (N.D. Cal. Dec. 16, 2014) (extending personal

2   jurisdiction over company's executive alleged to be the owner and lead marketing and sales

3   representative of company).

4       Here, Saboundjian is not merely an employee or officer of the three Radionomy business

5   entities.  As the founder of the Radionomy Service, an owner of Radionomy Group, and a hands-

6   on CEO, he is the central figure and the guiding force behind the infringing conduct.

7   Saboundjian's actions in purposefully directing harmful conduct at California, and purposefully

8   availing himself of the privilege of conducting activities in California, clearly provide the

9   "something more" required for personal jurisdiction.  *See Rio Properties, Inc. v. Rio Intern.*

10  *Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d

11  1316, 1322 (9th Cir. 1998); *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1197 (9th Cir.

12  1988).

13         **b.**     **Saboundjian Purposefully Directed His Conduct Toward**

            **California And Purposefully Availed Himself of California's**

14              **Legal Benefits and Protections.**

15            **i**     **Saboundjian's Purposeful Direction**

16      Analysis of a defendant's conduct under the "purposeful direction" standard is often used

17  in tort cases, including copyright cases, where the alleged minimum contacts arise from the

18  defendant's targeting of the forum state, or direction of tortious activity toward the forum state,

19  while located outside the forum state.  *Schwarzenegger*, 374 F.3d at 803 (citing *Keeton v. Hustler*

20  *Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)).  There is no doubt – or even any argument to the

21  contrary from Defendants – that the conduct of Radionomy Inc. and Radionomy S.A. in operating

22  the Radionomy Service suffices to establish purposeful direction.  *See Keeton,* 465 U.S. at 774-75

23  (finding purposeful direction where defendant published magazines in Ohio and circulated them in

24  the forum state, New Hampshire); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir.

25  2002) (finding purposeful direction where defendant distributed its pop music albums from

26  Europe in the forum state, California).  A global, highly interactive service of the type Radionomy

27  operates is virtually certain to impact California.  *Grokster,* 243 F. Supp. 2d 1086-87 (personal

28  jurisdiction appropriate where defendant operated website from which significant volume of

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

California customers downloaded infringing software); *Graduate Management Admission Council v. Raju,* 241 F. Supp. 2d 589, 596-98 (E.D. Va. 2003) (citizen of India who operated website selling infringing products subject to jurisdiction in U.S. under Rule 4(k)); *see also. Cybersell Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (holding that higher levels of interactivity and commercial nature of exchange of information on Internet website support personal jurisdiction). Indeed, any California resident with an Internet connection can stream infringing music from the Radionomy Service, and any number of internet radio stations available through that service are explicitly California-based.  (Knowles Decl. ¶ 18, Ex. Q.)

As a founder, Saboundjian personally helped to create the service that is now the basis for Sony Music's claims. As the CEO of all three Radionomy entities, and a shareholder in the parent Radionomy entity, Saboundjian continues to exercise ultimate control over the infringing service. He has directly participated in the operation of service, such as the decision to stream Plaintiffs' copyrighted works throughout the U.S., including California, even after he personally acknowledged to Sony Music that his companies have no permission to do so.  (Walker Decl. ¶¶ 2-8, Exhs. B-D.)  By personally acting as the lead Radionomy representative in unsuccessful efforts to obtain U.S. licenses from Sony Music, and rejecting demands to cease infringing, Saboundjian authorized and participated in the infringing conduct.  (*Id.*)  Saboundjian also directly participated in licensing negotiations with representatives of California-based Universal Music Group. (Walker Decl. ¶¶ 7-10, Ex. E, G.)  This personal control of and participation in a service that is directed to California suffices to establish Saboundjian's "purposeful direction" toward California.  *See j2 Global*, 2009 WL 29905, at *9 (finding non-resident former president of defendant subject to personal jurisdiction in connection with unlawful fax advertising because he personally participated in and was the guiding force for behind the companies fax advertising effort); *Davis v. Metro Productions, Inc.,* 885 F.2d 515, 522 (9th Cir. 1989) (finding individual defendants who were officers, directors, and 50% shareholders in company purposefully directed their activities toward the forum state in soliciting business from forum residents and meeting with forum residents).  Like the defendant in *j2 Global*, Saboundjian set company policies and had "personal involvement in and ultimate control over" every aspect of the alleged wrongful conduct.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   *See j2 Global*, 2009 WL 29905, at *9; Compl. ¶ 17.

2                    **ii      Saboundjian's Purposeful Availment**

3          Saboundjian's personal contacts with California were by no means limited to his control

4   over the operation of the Radionomy Service.  Saboundjian also purposefully availed himself of

5   the privilege of conducting activities in California by personally overseeing the expansion of

6   Radionomy's business into California, including the establishment of its U.S. Headquarters in

7   San Francisco.  (Compl. ¶¶ 17, 20; Knowles Decl. ¶¶ 6-9, Exhs. E-H.)  Indeed, Saboundjian

8   admits that he traveled to California once or twice per year over the past five years for the purpose

9   of "business."[17]  (Dkt. 31-1, ¶ 14.)  That "business" included acting as the ultimate decision-maker

10  for a service engaging in wholesale infringement of Plaintiff's works as an integral part of the

11  company's business model.  This course of conduct alone would suffice to constitute the

12  "something more" necessary for purposeful direction and/or or purposeful availment.  *Rio*

13  *Properties,* 284 F.3d at 1020 (finding "no problem" in holding purposeful availment requirement

14  satisfied where defendant operated a website *and* engaged in "something more" such as marketing

15  and running radio and print advertisements in the forum state); *Sinatra,* 854 F.2d at 1197

16  (purposeful intent to serve forum market includes: advertising in the forum state, establishing

17  channels for providing services to consumers in the forum state, and marketing product through

18  agent in the forum state).

19         But Saboundjian's conduct here went even further:  he personally designated himself as the

20  California resident agent for service of legal process on Radionomy, Inc..  (Knowles Decl. ¶¶ 7-9,

21  Exhs. F-H.)  In other words, not only "could [Saboundjian] have reasonably foreseen that [he]

22  would be haled into [California's] courts," (*Davis*, 885 F.2d at 524), he **did** foresee it.  By

23  _____

24  [17] Again, Saboundjian's declaration appears deliberately vague on this point.  He confines his
    review of business travel records to 2014-2015, even though his company established its

25  headquarters in California in 2012.  He acknowledges he visited San Francisco in 2014, but does
    not say what his purpose was.  He does not say how many times, or for how long, he was in the

26  Radionomy California headquarters.  In other words, Saboundjian's declaration is consistent with
    having spent weeks or months physically present and doing business in California during the

27  2012-13, or 2016, timeframe.

28

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

controlling and directing Radionomy's infringing conduct, including by such personal acts as physical presence in California for the purpose of running a business built on infringement and volunteering to accept service of process, Saboundjian subjected himself to personal jurisdiction here. *Id.*

Saboundjian's cited cases do not support a contrary conclusion. In *Uttarkar v. Bajaj*, Case No. 14-CV-02250-LHK, 2016 WL 393351 (N.D. Cal. Feb. 2, 2016), the court refused to hold the defendant individually subject to personal jurisdiction because "Plaintiff has not alleged that Defendant was in control of and a direct participant in [the company's] business activities in California." *Uttarkar,* 2016 WL 393351, at *6 (refusing to find personal jurisdiction "solely" because defendant was president of a company doing business in California). Similarly, in *Winery v. Graham*, the court found it lacked personal jurisdiction over defendants because they were either not in control of business decisions in the forum or not directly involved in the contact with the forum. *Winery*, 2007 WL 963252, at *6-*7 (N.D. Cal. Mar. 29, 2007).[18] Here, by contrast, Plaintiffs specifically allege that Saboundjian, as CEO, "has exercised, and continues to exercise, control over, and has actively and directly participated in the wrongful conduct by [the Radionomy entities]." (Compl. ¶ 17; *see also* Compl. ¶ 20 alleging Saboundjian's residency in California.) Moreover, unlike the defendants in *Winery,* Saboundjian directly participated in and oversaw his company's establishment of its U.S. headquarters in California. The jurisdictional facts in these cases fall far short of the Complaint's allegations – and the available facts – regarding Saboundjian's intentional infringement of Plaintiffs' copyrighted works through unlicensed streaming in the U.S., and in California, as well as Saboundjian's personal involvement in the establishment of a physical headquarters for Radionomy in California to further develop its online music service.

Additionally, even though the law is clear that the fiduciary shield doctrine Saboundjian invokes does not protect individual officers who controlled the wrongful conduct, Saboundjian's

---

[18] Similarly, in *Boschetto v. Hansing,* the plaintiff purchased a car on eBay, but no part of the contractual process occurred in California. *Boschetto,* 539 F.3d 1011, 1016 (9th Cir.).

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1   declaration is conspicuously silent on that subject.  While he self-servingly denies being in charge

2   of the day-to-day operations of the California office, nowhere does he deny that he was personally

3   responsible for the creation of the Radionomy Service, or the continuing management and

4   operation of the service (including compliance with licensing requirements) or, in particular, the

5   decision to continue streaming Sony Music's works without a U.S. license.  Under the governing

6   standard, therefore, these facts are established for purposes of the exercise of jurisdiction.

7           c.      **The Claims In This Action Arise Out Of Saboundjian's Contacts With California.**

8

9           To establish specific personal jurisdiction over a defendant, a plaintiff must also show that

10   the lawsuit arises from or is related to defendant's forum-related activities.  *Bancroft,* 223 F.3d at

11   1088.  To determine whether contacts are "related," the Ninth Circuit uses a broad "but for" test of

12   relatedness.  *Grokster Ltd.*, 243 F. Supp. 2d at 1085 (citing *Loral Terracom v. Valley National

13   Bank*, 49 F.3d 555, 561 (9th Cir. 1995)).  The forum contacts must "give rise to the current suit"

14   against the defendant, *Bancroft*, 223 F.3d at 1088, and must cause the plaintiff's injury.  *j2 Global*,

15   2009 WL 29905, at *9-*10.

16           This test is satisfied here at multiple levels.  First, as the guiding force for the service and

17   the ultimate decision-maker for the companies that operate it, Saboundjian is clearly responsible

18   for the decision to launch the service in the United States – *which he did from California.*  That is,

19   during the relevant time frame, Saboundjian's contacts with California constituted the operation of

20   (or at least participation in and control over) an infringing music service.  The extension of the

21   Radionomy Service to the U.S. *from a U.S. Headquarters in California* is what gave rise to Sony's

22   claim.  *Bancroft,* 223 F.3d at 1088; *Grokster,* 243 F.Supp.2d at 1085-86 *n.5.

23           Second, the impact of Saboundjian's purposeful availment of the privilege of conducting

24   business in California is undeniable.   This is true even though Saboundjian's forum-related

25   actions may have resulted in only a portion of Plaintiffs' overall alleged injury.  *Grokster Ltd.*, 243

26   F.Supp.2d at 1085-86 & n.5.  In *Grokster*, for example, the court found there to be no dispute that

27   a significant number of defendant's users (of infringing software) were located in California.  *Id.*

28   at 1087.  The *Grokster* court therefore found jurisdiction "presumptively reasonable" given

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   defendant's significant commercial contact with California for the purpose of furthering

2   defendant's business.  *Id.* at 1086-87 (holding, in multiple defendant case, that "but for"

3   defendant's in-forum conduct relating to copyright infringement, plaintiff's infringement claims

4   would not have arisen as to that defendant).  The same reasoning is equally applicable to subject

5   Saboundjian to personal jurisdiction here.

6         Finally, on a broader level, "but for" Saboundjian's conduct, Plaintiffs would not have

7   been injured *at all* by the Radionomy service.  Defendants do not dispute that Radionomy's

8   allegedly infringing music service is accessible to, and used by, California residents both as station

9   programmers and listeners – and thus causes Plaintiffs injury in California on a daily basis.  (*See*

10  Knowles Decl. ¶ 18, Ex. Q.)  Moreover, it was Saboundjian's personal development, management

11  and control of Radionomy the service and Radionomy the company, as founder and CEO –

12  including his failure to procure necessary U.S. licenses or pay applicable royalties– that gives rise

13  to Plaintiffs' causes of action against all Defendants.  The relatedness test is easily satisfied here.

14  *Bancroft,* 223 F.3d at 1088; *Grokster,* 243 F.Supp.2d at 1086-87.

### d.   Jurisdiction Over Saboundjian Is Reasonable Here.

16        "Once purposeful availment has been established, the forum's exercise of jurisdiction is

17  *presumptively reasonable.*"  *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991) (emphasis

18  in original); *Wolf,* 322 F. Supp. 2d at 1074 (same).  The defendant bears a "heavy burden" of

19  overcoming this presumption.  *j2 Global,* 2009 WL 29905, at *10 (citing *Ballard v. Savage,* 65

20  F.3d 1495, 1500 (9th Cir. 1995).  To rebut that presumption, the defendant must present a

21  "compelling case" that the exercise of jurisdiction would, in fact, be unreasonable.  *Id.*; *Burger*

22  *King*, 471 U.S. at 476.  The Ninth Circuit evaluates seven factors in determining reasonableness,

23  none of which favor Saboundjian, let alone rise to the level that would be necessary to overcome

24  the strong presumption of reasonableness here.

### i   Defendant's Purposeful Interjection Into California

26        The purposeful interjection factor is analogous to the purposeful direction analysis

27  discussed above.  *Sinatra*, 854 F.2d at 1199.  Because Plaintiffs have demonstrated Saboundjian's

28  purposeful interjection into California through his personal and active involvement in the

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

infringing activity alleged in the Complaint, as well as his personal involvement establishing Radionomy's U.S. Headquarters in California, this factor weighs strongly in favor of jurisdiction. *Panavision*, 141 F.3d at 1323.

### ii    Burden on Defendant

"A defendant's burden in litigation in the forum is a factor in the assessment of reasonableness, but unless the inconvenience is so great as to constitute a deprivation of due process it will not overcome clear justifications for the exercise of jurisdiction." *Openwave Systems, Inc. v. Fuld*, Case No. C-08-5683-SI, 2009 WL 1622164, at *13 (N.D. Cal. Jun. 6, 2009) (citing *Panavision,* 141 F.3d at 1323).  Although Saboundjian argues generally that his current residence in Belgium would be a substantial burden given the costs of transportation, travel, translators, and other costs, as several courts have acknowledged recently, "advances in technology and discounted airfare do not make it unreasonable for defendants to litigate in California." *Id.*  Moreover, Saboundjian's claim of undue burden rings hollow in light of his admission that he has traveled to California repeatedly to conduct business. (Dkt. 31-1 at ¶ 14.) Moreover, he is fluent in English, conducting all of his business with Sony Music in English.[19] (Walker Decl. ¶¶ 2-8, Exhs. B-E.)  Finally, Saboundjian's burden is further minimized by his representation by counsel with offices in Redwood City, in close proximity to the Court.  *See Openwave,* at *13 (citing *Panavision,* 141 F.3d at 1323).  This factor weighs against Saboundjian.[20]

### iii    Conflict With Sovereignty Of Defendant's State

Saboundjian does not contend that any conflict of law would adversely impact the

---

[19] Saboundjian's complaint of translation costs is therefore puzzling given his declarations and emails, all written in fluent English.  (Dkt. 31-1, 32-1; Walker Decl. Exhs. B-E; Knowles Decl. Exhs. U, V, X.)

[20] Saboundjian's citation to *Click v. Dorman*, Case No. C-06-1936-PJH, 2006 WL 2644889 (N.D. Cal. Sept. 14, 2006) is inapposite because the defendant at issue there was not alleged to be an officer or director of the defendant company, but rather, was only an employee of defendant who took certain actions on behalf of his employer.  This is nothing like the control exercised by Saboundjian, who is the CEO, founder, and shareholder for the Radionomy Entities.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  sovereignty interests of Belgium.  This factor therefore does not weigh in Saboundjian's favor.

2  *Openwave,* 2009 WL 1622164, at *14.

3            **iv**       **Forum State's Interest In Adjudicating The Dispute**

4        California has an interest in ensuring that companies conducting business within its

5  borders abide by U.S. and California law, and in compliance with California's Corporate Code.

6  *See N. California Collection Servs., Inc. of Sacramento v. Cent. Sierra Constr., Inc.*, No. CIV-

7  S06-01899-DFL-DAD, 2007 WL 926839, at *2 (E.D. Cal. Mar. 26, 2007) (in determining

8  whether exercising jurisdiction over a nonresident defendant is reasonable, court held that

9  California has an interest in ensuring compliance with its laws by out-of-state insurers who

10 purport to cover employees performing work in California).  Saboundjian's corporate filings with

11 the California Secretary of State for purposes of transacting business in California provide a

12 substantial interest to California in adjudicating the alleged copyright infringement occurring

13 within its borders.  Again, because Saboundjian availed himself of the benefits of doing business

14 in California, he must also submit to the burdens, including litigation.  *Schwarzenegger*, 374 F.3d

15 at 802 (quoting *Burger King*, 471 U.S. at 476).

16       Moreover, while Saboundjian suggests that this action's "only relationship with California

17 appears to be that Plaintiff's attorney practices here," that is simply wrong.  In fact, one of the

18 reasons that Plaintiffs brought suit in this forum was because Defendants themselves referred to

19 Radionomy Inc.'s San Francisco office as Radionomy's "U.S. Headquarters."  (Knowles Decl.¶ 5,

20 Ex. D.)  A company's "U.S. Headquarters" is presumably its principal place of business in the

21 U.S. – i.e., the "paradigmatic" location for personal jurisdiction.  *Ranza v. Nike*, 793 F.3d 1059,

22 1068 (9th Cir. 2015).  The fact that, upon filing of the Complaint, Defendants surrendered their

23 license to transact business in California, should not be used *against Plaintiffs* to weigh in favor of

24 dismissal for lack of jurisdiction.  *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907

25 F.2d 911, 913 (9th Cir. 1990) (in determining personal jurisdiction, only contacts occurring prior

26 to the litigation may be considered).  This factor therefore does not weigh in Saboundjian's favor.

27           **v**      **Most Efficient Judicial Resolution**

28       This factor focuses on the location of evidence and witnesses, but "is no longer weighed

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1    heavily given the modern advances in communication and transportation." *Openwave,* 2009 WL

2    1622164, at *14 (citing *Panavision,* 141 F.3d at 1323).  Again, all parties are represented by

3    counsel in close proximity to the Court, and there is no reason that this Court cannot serve as the

4    most efficient forum for resolution of this dispute. *Id.* at *13.  The only other forum proposed by

5    Saboundjian is Belgium, which would be extremely burdensome to Plaintiffs and an inefficient

6    forum for resolving Plaintiffs' claims of copyright infringement in the U.S. under U.S. law.  *See*

7    *EDAPS Consortium v. Kiyanichenko,* 2005 WL 2000940 (N.D. Cal. Aug. 18, 2005), at *2-*3

8    (denying motion to dismiss in *forum non conveniens* context, and holding that despite lesser

9    deference afforded to non-resident plaintiff's choice of forum, insufficient remedies in an

10   alternative foreign forum weighed in favor of plaintiff's chosen forum).  This factor weighs in

11   Plaintiffs' favor.

12                    vi      **Importance Of The Forum To Plaintiff**

13           Plaintiffs' convenience or inconvenience is not weighted heavily in determining whether

14   the exercise of jurisdiction is reasonable.  *Openwave,* 2009 WL 1622164, at *14 (citing

15   *Panavision,* 141 F.3d at 1324).  As set forth above, however, Plaintiffs' convenience in litigating

16   the action in this forum, as proposed to Saboundjian's proposed forum of Belgium, is significant.

17   This factor is therefore weighs in favor of Plaintiffs.

18                    vii     **Existence Of Alternative Forum**

19           Whether another reasonable forum exists becomes an issue *only when the forum state is*

20   *shown to be unreasonable.  Zherebko v. Reutskyy,* Case No. C-13-00843-JSW, 2013 WL 4407485,

21   at *5 (N.D. Cal. Aug. 12, 2013) (citing *Sinatra,* 854 F.2d at 1201).  Moreover, as discussed,

22   Saboundjian's only proposed alternative forum is Belgium, which provides an insufficient and

23   burdensome foreign for litigation of Plaintiffs' copyright claims based on the violation of U.S.

24   copyright laws.  As Plaintiffs are located in New York and Florida, have an office in California,

25   and are represented by legal counsel in California, Plaintiffs' selection of California as the forum

26   for this dispute should be given deference. *See Kiyanichenko,* 2005 WL 2000940, at *2 (citing

27   *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (although non-resident plaintiffs receive less

28   deference in their selection of forum, "less deference is not the same thing as no deference")).

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   This factor also favors Plaintiffs.

2                                   *        *        *

3       In sum, all factors weigh in Plaintiffs' favor.  Saboundjian clearly cannot present a

4   "compelling case that the district court's exercise of jurisdiction in California would be

5   unreasonable." *Openwave,* 2009 WL 1622164 (citing *Panavision*, 141 F.3d at 1324).  He has

6   failed to overcome the strong presumption of reasonableness.  *Roth,* 942 F.2d at 625.

7       **C.       The Court Has Personal Jurisdiction Over Radionomy Group B.V.**

8       Having conceded that Radionomy, Inc. and Radionomy, S.A. are subject to jurisdiction in

9   this Court, Radionomy Group – the parent company of those entities[21] – asserts that it is not

10  subject to jurisdiction because it is completely separate from, and has nothing to do with,

11  Radionomy's online music service that is alleged to infringe Plaintiffs' copyrighted works.  (Dkt.

12  32 at 5-6.)  As set forth above, however, this is demonstrably untrue.

13      First, the available facts show that, among other things, Radionomy Group shares online

14  resources, offices, executives and no doubt other resources with the other Radionomy entities.

15  Indeed, these facts support the Complaint's uncontradicted allegation that Saboundjian, as the

16  CEO of all Radionomy entities, has controlled and directed the conduct of all Defendants to

17  engage in the infringing conduct at issue in this case, such that they are all alter egos of each other.

18  This alone is sufficient to establish personal jurisdiction over Radionomy Group in this action.

19  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.

20  2003) (reversing district court's dismissal of claims for lack of jurisdiction and denial of

21  jurisdictional discovery where record was not sufficiently developed as to jurisdictional facts to

22  determine whether alter ego test was met given that plaintiffs had shown parent company

23  ownership of subsidiaries and common executives and offices); *see also Doe*, 248 F.3d at 922

24  (plaintiff "need make only a prima facie showing of jurisdictional facts").

25      But here, there is more.  By all outward appearances – from Saboundjian's use of a

26  _____

27  [21] *See* Knowles Decl. ¶ 19, Ex. R; Dkt. 32-1 at ¶ 11.

28

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  "Radionomy Group" business card to negotiate licenses for the Radionomy music service, to a

2  website for Radionomy Group clearly indicating that the entity operates the service, to an

3  infringing app offered by "Radionomy" – no distinction is made among the various Radionomy

4  entities with respect to the operation of the music service.  Indeed, the only publicly available

5  distinction between Radionomy Group is that, in addition to being a driving force behind the

6  Radionomy service, it also owns (and presumably manages) three other assets:  SHOUTcast,

7  TargetSpot, Hotmixradio, and Winamp.  (Knowles Decl. Exhs. A, L.)

8        To the extent that the Court believes Plaintiffs have not set forth sufficient facts

9  establishing personal jurisdiction over Radionomy Group (or over Defendant Saboundjian),

10  Plaintiffs request that the Court grant Plaintiffs' request for expedited jurisdictional discovery

11  requested herein (*See* Section III, *infra*) and defer ruling on Defendants' motions to dismiss until

12  that discovery is complete and Plaintiffs have had the opportunity to submit additional

13  jurisdictional facts to the Court.  Radionomy Group should not be heard to object, because it has

14  expressly agreed not to resist discovery into jurisdictional issues.  (Knowles Decl. Ex. P.)

15        **D.   In the Alternative, Personal Jurisdiction Over Saboundjian And Radionomy
          Group Is Proper Under Fed. R. Civ. P. 4(k)(2).**

16

17        Should the Court find jurisdiction over Saboundjian and/or Radionomy Group unavailable

18  based on Defendants' California contacts, it is nonetheless proper for this Court to exercise

19  jurisdiction over them based on their aggregated U.S. contacts under Fed. R. Civ. P. 4(k)(2).  Rule

20  4(k)(2) permits nationwide aggregation of contacts for cases arising under federal law, unless

21  (1) the defendant is subject to jurisdiction of the courts of general jurisdiction of any state, or

22  (2) aggregation is expressly forbidden by the relevant law.  *Grokster*, 243 F.Supp.2d at 1094.

23  Specifically, Rule 4(k)(2) permits jurisdiction to be exercised over copyright claims, such as those

24  here, against a foreign defendant where sufficient contacts with, or injury to, U.S. residents is

25  alleged, even though there are not sufficient contacts with any single state to justify jurisdiction in

26  that state. *Grokster*, 243 F. Supp. 2d at 1094 (finding jurisdiction over defendant as alternative

27  basis where defendant allegedly engaged in nationwide copyright infringement directed at the

28  U.S.); *see also Raju,* 241 F. Supp. 2d 589, 596-98 (E.D. Va. 2003) (citizen of India who operated

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1  website selling products that infringed plaintiff's copyright subject to jurisdiction under Rule

2  4(k)(2); *Quokka Sports, Inc. v. Cup Int'l Ltd.,* 99 F. Supp. 2d 1105, 1110-11 (N.D. Cal. 1999)

3  (holding in trademark case that, "[a]s defendants have made no assertion that they are subject to

4  the general jurisdiction of any state,  nor does any such jurisdiction appear likely to the Court

5  based on the evidence submitted, the aggregation of Rule 4(k)(2) applies.").

6          Similarly here, Plaintiffs claims arise under federal law, and Saboundjian and Radionomy

7  Group have not asserted that they are subject to general jurisdiction in any U.S. state.  The

8  allegations of the Complaint and facts submitted, however, are more than sufficient to show that

9  both Saboundjian and Radionomy Group participated in the purposeful targeting of the U.S.

10  market.  Acts directed to the United States include expansion of the Radionomy Service to the

11  U.S., incorporation of a company in Delaware, establishing a headquarters in California,

12  negotiating licenses in New York and California, and paying royalties to SoundExchange in

13  Washington, D.C.  (Knowles Decl. ¶¶ 4-11, 14, Exhs. D-J, M, Q; Walker Decl. ¶¶ 2-11; Exhs.

14  A-G.)  The Radionomy Service itself is clearly targeting U.S. users, encouraging them to listen to

15  and to program stations streaming copyrighted content – and paying some of them – all despite the

16  absence of a valid U.S. license or payment of royalties.  (Walker Decl. ¶¶ 2-8; Exhs. A-D.)  Thus,

17  even if neither defendant has sufficient California-specific contacts, they are subject to jurisdiction

18  here under Rule 4(k)(2) based on their nationwide contacts.  *Grokster*, 243 F. Supp. 2d at 1094;

19  *Quokka Sports,* 99 F. Supp. 2d at 1110-11.[22]

20  **II.     THE COMPLAINT STATES A CLAIM AGAINST ALL DEFENDANTS.**

21         **A.     The Complaint Pleads Facts Sufficient To State A Claim Against Saboundjian.**

22

23          In considering a motion to dismiss under Rule 12(b)(6), the allegations in the complaint,

24  together with reasonable inferences taken therefrom, are assumed to be true.  *Odom*, 486 F.3d at

25  _____

26  [22] Moreover, when jurisdiction is based on Fed. R. Civ. P. 4(k)(2), the "fiduciary shield" doctrine
is inapplicable.  *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552-53 (7th Cir.
27  2001).

28

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

545.  A dismissal for failure to state a claim pursuant to 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Id.*  In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider (1) the allegations of the complaint, (2) documents of unquestioned authenticity, whose contents are alleged in the complaint but are not physically attached to the pleading, and (3) documents subject to judicial notice.  *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cnty of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *see also* Fed. R. Civ. P. 12(d).[23]

Where a corporation is the alleged infringer, corporate officers, shareholders and employees may be held personally liable for the corporation's infringements where those individuals "are a moving, active conscious force behind the corporation's infringement, regardless of whether they are aware that their acts will result in infringement." *Urban Accessories, Inc. v. Iron Age Design and Import, LLC,* Case No. C-14-1529-JLR, 2015 WL 1510027, at *4 (W.D. Wash. Apr. 1, 2015).  In the *Urban Accessories* case, the court denied a motion to dismiss under Rule 12(b)(6) where employee and officer defendants were alleged to have personally directed or otherwise participated in the decision to make infringing products. *Id.,* 2015 WL 1510027, at *4.   The court in that case specifically rejected the defendants' arguments that the complaint failed to identify specific acts taken by the defendants in their individual capacities.  Rather, consistent with Ninth Circuit case law, the *Urban Accessories* court held that an officer or employee of a company liable for copyright infringement may be liable for copyright infringement in which he or she personally participates, regardless of whether he or she participates in an individual capacity or as an agent.  *Id.* at *5 (citing *Carson v. Verismart Software*, Case No. C-11-03766-LB, 2012 WL 1038662, at *5 (N.D. Cal. Mar. 27, 2012); *see also*

---

[23] Accordingly, the Court may not give any consideration to Saboundjian's declaration statement in evaluating his claim for dismissal pursuant to Rule 12(b)(6).  Documents and materials submitted by Plaintiffs subject to their request for judicial notice, however, are proper for consideration.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

*Adobe Sys. Inc. v. Childers,* Case No. 5:10-cv-03571-JF/HRL, 2011 WL 566812, at *7 (N.D. Cal. Feb. 14, 2011) (finding that because defendant was the owner and lead marketing and sales representative of the company, "there is a plausible basis for concluding that he participated, authorized or directed the challenged activity involved in this case").

Similarly here, the Complaint alleges that Saboundjian exercises control over, and actively and directly participated in, the wrongful conduct by the Radionomy entities, including residing in California in connection with Radionomy Inc.'s U.S. Headquarters.  (Compl. ¶¶ 17, 20.)  The materials and information submitted in connection with Plaintiffs' Request for Judicial Notice support those allegations.  (*See, e.g.,* Knowles Decl. Exhs. A-I, K-O.)  Saboundjian's individual actions directly caused the infringing conduct to occur because, as CEO, Saboundjian either directed or, at a minimum, allowed Defendant's music service to stream copyrighted sound recordings with knowledge that Radionomy did not have a U.S. license to stream such recordings in the U.S. and with knowledge that Radionomy was not paying any statutory royalties for streaming these works.  (Compl. ¶¶ 17, 20, 37-40.)  Indeed, it was Saboundjian's failure to obtain a U.S. license, but allowing the infringing activity to occur anyway, that resulted in unlawful conduct alleged in the Complaint.  Saboundjian, by nature of his office and his actions, was both the person directly involved in licensing negotiations, and the one with ultimate decision-making authority regarding the operation of the Radionomy service despite the lack of licensing.  *Adobe Sys.,* 2011 WL 566812, at *7; *Verismart,* 2012 WL 1038662, at *5. The Complaint states a viable claim against Saboundjian.

## B.   The Complaint Pleads Facts Sufficient To State A Claim Against Radionomy Group BV, Radionomy S.A., And Radionomy, Inc.

Not being able to move for dismissal based on lack of personal jurisdiction, but still needing to respond to the Complaint, Radionomy Inc. and Radionomy S.A. (along with Radionomy Group) move to dismiss the Complaint under Rule 12(b)(6) because the Complaint purportedly fails to give Defendants "fair notice" about their respective wrongful conduct or theory of liability.  (Defs' Mot. at 8-9.)  This argument, to which Defendants tellingly dedicate only a single page of argument, fails to warrant dismissal of the Complaint.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

A plaintiff's burden at the pleading stage is light.  Civil Rule 8(a)(2) states that all that is needed is a "short and plain statement of the claim showing that the pleader is entitled to relief." This means that the complaint must include "sufficient allegations to put defendants fairly on notice of the claims against them."  *McKeever v. Block,* 932 F.2d 795, 798 (9th Cir. 1991).  Courts have held that defendants lack this required notice where, for example, there are multiple claims against multiple defendants, each with a separate role in the alleged wrongful events, such that the defendants are not put on notice of their individual basis for liability in the alleged wrongdoing. *See, e.g., In re Tevis*, 2011 WL 7145712, at *8 (9th Cir. BAP 2011) (involving 18 claims for relief pleaded in confusing manner against multiple individuals and entities regarding various alleged misrepresentations and wrongful conduct); *Fortaleza v. PNC Financial Services Group, Inc.*, 642 F. Supp. 2d 1012 (2009) (involving 17 causes of action alleged against multiple defendants, including fraud claims under Rule 9(b)).[24]

Courts primarily find fault with pleadings that generally assert all claims against all defendants where certain claims cannot, as a matter of fact or law, be asserted against all defendants. Due to its complexity, such a pleading does not, by nature, provide the requisite fair notice absent allegations making clear what role each defendant played in the alleged misconduct. *See Foley v. Bates,* Case No. C-07-0402-PJH, 2007 WL 1430096 (N.D. Cal. May 14, 2007) (finding fair notice lacking where complaint alleges all claims against all defendants but "it is obvious that plaintiff's claims cannot even be asserted against all defendants"); *In re Sagent Technology, Inc.,* 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) ("A complaint that lumps together thirteen individual defendants, where only three of the individuals was alleged to have been present for the entire period of events alleged in the complaint, fails to give fair notice of the claim to those defendants."); *Melegrito v. CitiMortgage Inc.*, Case No. C-11-01765-LB, 2011 WL

---

[24] While a higher specificity among individual defendants' roles in alleged wrongdoing is required for claims of fraud under Rule 9 (*see Forteleza*, 642 F. Supp. 2d at 1024 (holding that Rule 9(b) does not allow a complaint to "merely lump multiple defendants together")), that higher standard is inapplicable here.

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   2197534 (N.D. Cal. June 6, 2011) (finding failure to differentiate between defendants improper

2   where certain claims pertained to acts of mortgage broker defendant, while other claims related to

3   acts of other defendant in servicing the loan).

4   However, assertions of improper group pleading are misplaced where the various claims

5   are all properly asserted against those defendants. *See, e.g., In re American Apparel, Inc. S'holder*

6   *Deriv. Litig.,* Case No. 10-065767-MMM, 2012 WL 9506072, at *40 (C.D. Cal. July 31, 2012)

7   (holding that group pleading is not *per se* impermissible "so long as group pleading is limited to

8   defendants who are similarly situated").  In sum, the "fair notice" requirement merely demands

9   that complaint allegations be such that defendants "should not have to guess as to which claims

10  they are subject." *Id.* at *6.  Since it is clear that the basis of liability for all Defendants is the

11  same, no guessing is required here.

12  Defendants cannot plausibly assert that they are not aware of the claims against them.

13  While the Complaint pleads seven claims for relief, the claims all arise from a single, cohesive

14  course of  conduct – i.e., the operation of an online music service built on the unlawful

15  distribution, display, and performance of copyrighted works.. (*See, e.g.,* Compl. ¶¶ 30-42.)  Each

16  of Defendants is alleged to have participated in the infringing operations of the Radionomy

17  service, by which Plaintiffs' copyrighted works have been infringed.  (*Id.*)  Although the

18  Complaint asserts both direct and indirect liability (as well as federal and state claims), *all* of the

19  claims in the Complaint arise from the singular wrongful conduct of the operation of Radionomy's

20  infringing service.  (Compl. at 12-23.)  While Defendants can continue to play their "shell games"

21  and attempt to conceal who precisely did what, they cannot argue that they do not have fair notice

22  of the claims alleged against them, which are properly brought against each of them.  *In re*

23  *American Apparel,* 2012 WL 9506072, at *40.

24  **III.    PLAINTIFFS SHOULD BE PERMITTED EXPEDITED JURISDICTIONAL
          DISCOVERY TO FURTHER ESTABLISH JURISDICTION AS TO**

25  **SABOUNDJIAN AND RADIONOMY GROUP B.V.**

26  Should the Court be inclined to determine that Plaintiffs have not made a prima facie

27  showing of this Court's jurisdiction over Saboundjian and/or Radionomy Group, Plaintiffs request

28  that the Court delay ruling on the present motions and allow Plaintiffs to conduct limited

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

1    jurisdictional discovery on an expedited schedule.

2         A plaintiff may obtain discovery in response to a defendant's claim that it is not subject to

3    personal jurisdiction.  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  Indeed,

4    "discovery *should be granted* when . . . the jurisdictional facts are contested or more facts are

5    needed."  *Id.* (emphasis added); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430,

6    n.24 (9th Cir. 1977) (same); *see also Invitrogen Corp. v. President & Fellows of Harvard Coll.*,

7    Case No. C-07-CV-0878-JLSPOR, 2007 WL 2915058, at *4 (S.D. Cal. Oct. 4, 2007) ("[A]n order

8    granting limited discovery is required . . . to afford Plaintiff the opportunity to obtain evidence to

9    prove its jurisdictional claim.").

10        The showing Plaintiffs must make to obtain jurisdictional discovery is "something *less*

11   than a prima facie showing."  *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)

12   (emphasis added).  Instead, a plaintiff need only "come forward with 'some evidence' tending to

13   establish personal jurisdiction over the defendant.'"  *Id.*; *Orchid Biosciences, Inc. v. St. Louis

14   University*, 198 F.R.D. 670, 673 (S.D. Cal. 2001) (ordering expedited responses to plaintiff's

15   discovery requests and continuing hearing date for defendant's motion to dismiss until completion

16   of jurisdictional discovery); *Focht v. Sol Melia S.A.*, No. C-10-0906 EMC, 2010 WL 3155826, at

17   *5 (N.D. Cal. Aug. 9, 2010) (allowing plaintiff to take two depositions while defendant's motion

18   to dismiss for lack of personal jurisdiction was pending).  Thus, even if Plaintiffs have not made

19   out a prima facie case – which Plaintiffs submit they have – the facts identified above, and

20   contained in the attached affidavits, constitute "some evidence" tending to establish personal

21   jurisdiction, and so entitle Plaintiffs to jurisdictional discovery.  *Id.*

22        Plaintiffs are currently ready to serve discovery on Defendants, including limited and

23   targeted discovery as to the relationship between Radionomy S.A. and Radionomy, Inc., and

24   Radionomy Group B.V., as well as Saboundjian's and Radionomy Group's contacts with

25   California.  However, absent a court order, the first responses to that discovery will not become

26   due until well after the briefing on this motion has closed and the Court has held the hearing on

27   June 16, 2016.  To facilitate the speedy resolution of these motions in the event the Court is not

28   inclined to deny defendants' jurisdictional motion, Plaintiffs  request that the Court issue an order

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1   permitting Plaintiffs to propound limited jurisdictional discovery on all Defendants, including an

2   expedited deposition of Saboundjian, and establishing a shortened schedule for Defendants to

3   respond.[25]

4        Accordingly, the Court should continue its hearing or ruling on Defendants' motions and

5   allow expedited jurisdictional discovery if it intends to rule that Saboundjian and the Radionomy

6   Group are not subject to personal jurisdiction in California. [26]

7   **IV.   PLAINTIFFS SHOULD BE PERMITTED TO AMEND THEIR COMPLAINT IF
         THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTIONS.**

8

9        If the Court concludes that Plaintiffs' Complaint should be dismissed, Plaintiffs request

10  leave to amend the Complaint.  Under Fed. R. Civ. P. 15(a), leave to amend "shall be freely given

11  when justice so requires."  This policy is "to be applied with extreme liberality."  *Eminence*

12  *Capitol LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (finding district court abused its

13  discretion by not permitting plaintiff to file a Second Amended Complaint where plaintiffs had a

14  reasonable chance of successfully stating a claim if given another chance).  Moreover, dismissal

15  _____

16  [25] Should the court grant Plaintiffs' request for expedited discovery, Plaintiffs will propound
    limited jurisdictional requests for production and interrogatories, and will seek to take an early

17  limited-scope deposition of Saboundjian.  Plaintiffs request that Defendants be ordered to comply

18  and/or produce discovery responses within 20 days of service of such discovery, or in accordance
    with a schedule set by the Court prior to ruling on Defendants' motions to dismiss.  Plaintiffs

19  request that none of this expedited and limited jurisdictional discovery prejudice or prevent
    Plaintiffs' right and ability to take full-scope subsequent discovery on the merits.

20  [26] Expedited discovery may be granted on a showing of "good cause."  *Semitool, Inc. v. Tokyo*

21  *Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the
    need for expedited discovery . . . outweighs the prejudice to the responding party.").  Good cause

22  exists here because delay in obtaining the necessary jurisdictional discovery will deny Plaintiffs

23  the opportunity to present evidence to which it is entitled and that will establish that Saboundjian
    and the Radionomy Group are subject to personal jurisdiction in California.  Plaintiffs' inability to

24  obtain and present the evidence will cause them significant prejudice.  *Laub*, 342 F.3d at 1093

25  ("Prejudice is established if there is a reasonable probability that the outcome would have been
    different had discovery been allowed.").  By contrast, the limited expedited discovery Plaintiffs

26  intend to propound will not prejudice Defendants because the material sought by Plaintiffs will be
    discoverable from the other Radionomy defendants.  In fact, all Radionomy entity defendants,

27  including Radionomy Group, have agreed not to resist jurisdictional discovery.  (Knowles Decl.,
    Ex. V.)

28

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

1  with prejudice and without leave to amend is not appropriate unless it is clear that the complaint

2  could not be saved by amendment.  *Id.* at 1052 (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th

3  Cir.1996)).  Notably, Defendants' motions do not attempt to deny the infringing conduct alleged in

4  Plaintiffs' complaint.  Rather, Defendants have raised jurisdictional and fair notice arguments that,

5  if necessary, can be addressed and corrected through amended allegations, as well as through

6  additional discovery requested by Plaintiffs.  Denial of leave to amend here, after Plaintiffs' first

7  pleading, would be an abuse of discretion.  *Id.*

8  <u>**CONCLUSION**</u>

9  For the foregoing reasons, Plaintiffs respectfully request that the Court deny Saboundjian's

10  and Radionomy Group's motions to dismiss pursuant to Rule 12(b)(2) for lack of personal

11  jurisdiction, and that the Court also deny all Defendants' motions to dismiss pursuant to Rule

12  12(b)(6) for failure to state a claim upon which relief can be granted.  Additionally, and/or

13  alternatively, Plaintiffs request expedited discovery and deferral of the Court's ruling on

14  Defendants' motions until further discovery is produced by Defendants and Plaintiffs have the

15  opportunity to submit additional facts in support of jurisdiction to the Court.

16  DATED:  May 23, 2016                    COBLENTZ PATCH DUFFY & BASS LLP

17

18                                        By:        */s/ Jeffrey G. Knowles*

19                                                  Jeffrey G. Knowles
                                                   Attorneys for Plaintiffs
20                                                 ARISTA MUSIC, ARISTA RECORDS, LLC,
                                                   LAFACE RECORDS LLC, SONY MUSIC
21                                                 ENTERTAINMENT, SONY MUSIC
                                                   ENTERTAINMENT US LATIN LLC, AND
22                                                 ZOMBA RECORDING, LLC

23

24

25

26

27

28